1 | **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2 | Name   DUMLAO           JOHN           K.
        (Last)           (First)         (Initial)

*FILED*

3 | Prisoner Number ___ C-16555

4 | Institutional Address   KERN VALLEY STATE PRISON (KVSP)
                    P.O. BOX 5101/A4-215
5 |                     DELANO, CA  93216-5101

*JUN 17 2008*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

6 |

7 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8 | JOHN KEVIN DUMLAO
(Enter the full name of plaintiff in this action.)

9 |

**CV 08   2988**

10 |             vs.

Case No. _____
(To be provided by the clerk of court)

**SI**

10 | HEDGPETH, WARDEN KVSP

11 | **PETITION FOR A WRIT**
**OF HABEAS CORPUS**

12 |

**(PR)**

13 |

14 | (Enter the full name of respondent(s) or jailor in this action)

E-filing

15 |

16 | Read Comments Carefully Before Filling In

17 | When and Where to File

18 |       You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23 |       If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located.  If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined.  Habeas L.R. 2254-3(b).

1   Who to Name as Respondent

2          You must name the person in whose actual custody you are. This usually means the Warden or

3   jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4   you are imprisoned or by whom you were convicted and sentenced. These are not proper

5   respondents.

6          If you are not presently in custody pursuant to the state judgment against which you seek relief

7   but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8   custody you are now and the Attorney General of the state in which the judgment you seek to attack

9   was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11         1. What sentence are you challenging in this petition?

12              (a)     Name and location of court that imposed sentence (for example; Alameda

13                      County Superior Court, Oakland):

14              COUNTY SUPERICR COURT, ALAMEDA   1225 FALLON ST, OAKLAND

15                      Court                              Location

16              (b)     Case number, if known __ALAMEDA 71832_____

17              (c)     Date and terms of sentence __09/81; SEVEN YEARS TO LIFE__

18              (d)     Are you now in custody serving this term? (Custody means being in jail, on

19                      parole or probation, etc.)              Yes __X__    No _____

20                      Where?

21                      Name of Institution: __KERN VALLEY STATE PRISON_____

22                      Address: __P.O. BOX 5101, DELANO, CA  93216-5101__

23         2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  KIDNAP FOR ROBBERY 209(b); ROBBERY 211 WITH USE OF FIREARM

27  _____

28  _____

1        3. Did you have any of the following?

2             Arraignment:                     Yes  X    No _____

3             Preliminary Hearing:          Yes  X    No _____

4             Motion to Suppress:          Yes  X    No _____

5        4. How did you plead?

6             Guilty _____    Not Guilty  X    Nolo Contendere _____

7             Any other plea (specify) _____

8        5. If you went to trial, what kind of trial did you have?

9             Jury  X    Judge alone _____   Judge alone on a transcript _____

10      6. Did you testify at your trial?          Yes  X    No _____

11      7. Did you have an attorney at the following proceedings:

12         (a)   Arraignment              Yes  X    No _____

13         (b)   Preliminary hearing      Yes  X    No _____

14         (c)   Time of plea             Yes  X    No _____

15         (d)   Trial                   Yes  X    No _____

16         (e)   Sentencing             Yes  X    No _____

17         (f)   Appeal                 Yes  X    No _____

18         (g)   Other post-conviction proceeding   Yes  X    No _____

19      8. Did you appeal your conviction?       Yes  X    No _____

20         (a)   If you did, to what court(s) did you appeal?

21             Court of Appeal           Yes  X    No _____

22             Year: 1981      Result: DENIED _____

23             Supreme Court of California   Yes _____   No  X

24             Year: _____     Result: _____

25             Any other court          Yes _____   No  X

26             Year: _____     Result: _____

27

28         (b)   If you appealed, were the grounds the same as those that you are raising in this

1               petition?                          Yes _____     No X

2          (c)     Was there an opinion?            Yes _____     No X

3          (d)     Did you seek permission to file a late appeal under Rule 31(a)?

4                                                   Yes _____     No X

5              If you did, give the name of the court and the result:

6            _____

7            _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?           Yes _____     No X

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16          (a)     If you sought relief in any proceeding other than an appeal, answer the following

17               questions for each proceeding. Attach extra paper if you need more space.

18               I.      Name of Court: EL CENTRO SUPERIOR, ALAMEDA

19                     Type of Proceeding: HABEAS CORPUS

20                     Grounds raised (Be brief but specific):

21                     a. FRADULENT PROBATION REPORT USED BY BOARD OF PRISON

22                     b. DUE PROCESS VIOLATION OF 14TH AND 15TH AMENDMENTS

23                     c. BOARD OF PRISON TERMS (BPT) FAILED TO FOLLOW

24                     ✗✗+++MATRIX GUIDELINES FOR PAROLE HEARINGS *continued on back page A Exhibit C*

25                     Result: DENIED              Date of Result: 2005

26              II.     Name of Court: SAN DEIGO APPEALS COURT

27                     Type of Proceeding: HABEAS CORPUS

28                     Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: ___DENIED_____ Date of Result:08/30/2006

III.   Name of Court: SUPREME COURT

Type of Proceeding: HABEAS CORPUS

Grounds raised (Be brief but specific):

a.DENIAL BY BPT BASED ON FRAUDELENT PROBATION REPORT

b.5TH & 14TH VIOLATION OF DUE PROCESS AMENDMENT

c. _____

d. _____

Result: ___DENIED_____ Date of Result:01/23/08

IV.   Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result:_____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____     No_X_

Name and location of court: U.S. District Court Northern District

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened?

Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1   need more space. Answer the same questions for each claim.

2   [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   Claim One: THE BPT HEARING DENIED ME PROCEDURAL AND SUBSTANTIVE

6   DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS (DUE PROCESS).

7   Supporting Facts: JUVENILE REPORT INVOLVED MOSTLY PROPERTY CRIMES

8   WITH NO VIOLENCE INVOLVED OR INJURY. THIS MITIGATING FACTOR

9   WAS NOT CONSIDERED BY THE BPT, THEREBY FAILING TO ADHERE TO

10   THEIR OWN MATRIX GUIDELINES. (CONTINUED)

11   Claim Two:

12

13   Supporting Facts:

14

15

16

17   Claim Three:

18

19   Supporting Facts:

20

21

22

23   If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 6 -

(CONTINUATION OF CLAIM ONE, PAGE 6)

Probation Officer Locke of Oakland, California, made out a
probation report stating that I committed a murder and an
attempted murder and beat it on a technicality.  There was
no murder or attempted murder even committed.  This probation
report has been used numerous times at my BPT hearings and
I've been questioned every time and told the BPT it was false
and the BPT members would use this fradulent information
on the probation report as a "silent beef" to deny me parole.
Counselors at Calipatria State Prison stated that they checked
this information out and was going to remove it out of my
file, but this never happened.  My hearing in 2005 also used
this fradulent information in the probation report again
and questioned me again about the murder and attempted murder.
I explained again that it was false, but was again denied
parole.

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

4  _____

5  _____

6  _____

7  Do you have an attorney for this petition?                        Yes_____        No__X__

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on 4-  10  -08

14                Date                                    Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

1

2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

**INSTRUCTIONS FOR PRISONER'S
IN FORMA PAUPERIS APPLICATION**

4

5

6

You must submit to the court a completed Prisoner's In Forma Pauperis Application if you are unable to pay the entire filing fee at the time you file your complaint or petition. Your application must include copies of the prisoner trust account statement showing transactions for the last six months and a certificate of funds in prisoner's account, signed by an authorized officer of the institution.

7

**A.    Non-habeas Civil Actions**

8

9

The filing fee for any civil action other than a habeas is $350.00. Even if you are granted leave to proceed in forma pauperis, you must still pay the full amount of the court's filing fee, but the fee will be paid in several installments. 28 U.S.C. § 1915.

10

11

12

13

You must pay an initial partial filing fee of 20 percent of the greater of (a) the average monthly deposits to your account for the 6-month period immediately before the complaint was filed or (b) the average monthly balance in your account for the 6-month period immediately before the complaint was filed. The court will use the information provided on the certificate of funds and the trust account statement to determine the filing fee immediately due and will send instructions to you and the prison trust account office for payment if in forma pauperis status is granted.

14

15

16

After the initial partial filing fee is paid, your prison's trust account office will forward to the court each month 20 percent of the most recent month's income to your prison trust account, to the extent the account balance exceeds ten dollars ($10.00). Monthly payments will be required until the full filing fee is paid. If you have no funds over ten dollars ($10.00) in your account, you will not be required to pay part of the filing fee that month.

17

18

19

**If your application to proceed in forma pauperis is granted, you will be liable for the full $350.00 filing fee even if your civil action is dismissed. That means the court will continue to collect payments until the entire filing fee is paid. However, if you do not submit this completed application the action will be dismissed without prejudice and the filing fee will not be collected.**

20

**B.    Habeas Actions**

21

22

23

The filing fee for a habeas action is $5.00. If you are granted leave to proceed in forma pauperis you will not be required to pay any portion of this fee. If you are not granted leave to proceed in forma pauperis you must pay the fee in one payment and not in installments. **If you use a habeas form to file a non-habeas civil action, you will be required to pay the $350.00 filing fee applicable to all non-habeas civil actions.**

24

25

26

27

28

IFP APPLI.-PRISONER-Rev. 6/02

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9

10  JOHN KEVEN DUMLAO

11                          Plaintiff,        CASE NO. _____

12      vs.                                   **PRISONER'S**
                                              **APPLICATION TO PROCEED**
13  A. HEDGPETH, WARDEN, KVSP                 **IN FORMA PAUPERIS**

14                          Defendant.

15

16      I, ___JOHN KEVEN DUMLAO___, declare, under penalty of perjury that I am the plaintiff in

17  the above entitled case and that the information I offer throughout this application is true and correct.

18  I offer this application in support of my request to proceed without being required to prepay the full

19  amount of fees, costs or give security.  I state that because of my poverty I am unable to pay the

20  costs of this action or give security, and that I believe that I am entitled to relief.

21          In support of this application, I provide the following information:

22  1.      Are you presently employed?   Yes _X_ No ____

23  If your answer is "yes," state both your gross and net salary or wages per month, and give the name

24  and address of your employer:

25  Gross: ___13¢ PER HOUR_____   Net: ___$15.00 PER MONTH_____

26  Employer: _KERN VALLEY STATE PRISON, DELANO, CA  93216_____

27  _____

28  If the answer is "no," state the date of last employment and the amount of the gross and net salary

PRIS. APPLIC. TO PROC. IN FORMA

PAUPERIS, Case No._____            - 1 -

1   and wages per month which you received.   (If you are imprisoned, specify the last place of

2   employment prior to imprisonment.)

3   KELLOGS CORN FALKES, 77TH AVENUE, OAKLAND, CA

4   _____

5   _____

6   2.     Have you received, within the past twelve (12) months, any money from any of the following

7   sources:

8          a.     Business, Profession or                      Yes ____ No _X_

9                 self employment

10         b.     Income from stocks, bonds,                    Yes ____ No _X_

11                or royalties?

12         c.     Rent payments?                                Yes ____ No _X_

13         d.     Pensions, annuities, or                       Yes ____ No _X_

14                life insurance payments?

15         e.     Federal or State welfare payments,            Yes ____ No _X_

16                Social Security or other govern-

17                ment source?

18  If the answer is "yes" to any of the above, describe each source of money and state the amount

19  received from each.

20  _____

21  _____

22  3.     Are you married?                                     Yes ____ No _X_

23  Spouse's Full Name: _____

24  Spouse's Place of Employment: _____

25  Spouse's Monthly Salary, Wages or Income:

26  Gross $_____ Net $_____

27  4.     a.     List amount you contribute to your spouse's support : $ _____

28         b.     List the persons other than your spouse who are dependent upon you for support

PRIS. APPLIC. TO PROC. IN FORMA

PAUPERIS, Case No._____                    - 2 -

1    and indicate how much you contribute toward their support. (NOTE: For minor

2    children, list only their initials and ages. DO NOT INCLUDE THEIR NAMES.).

3    _____

4    _____

5    5.    Do you own or are you buying a home?    Yes ___ No _x__

6    Estimated Market Value: $_____ Amount of Mortgage: $_____

7    6.    Do you own an automobile?    Yes ___ No _X__

8    Make _____ Year _____ Model _____

9    Is it financed? Yes _____ No _____ If so, Total due: $_____

10   Monthly Payment: $_____

11   7.    Do you have a bank account?  Yes _____ No _X__ (Do not include account numbers.)

12   Name(s) and address(es) of bank: _____

13   _____

14   Present balance(s): $_____

15   Do you own any cash?  Yes ___ No _X__  Amount: $_____

16   Do you have any other assets? (If "yes," provide a description of each asset and its estimated

17   market value.)  Yes ___ No _X__

18   _____

19   8.    What are your monthly expenses?

20   Rent: $_____    Utilities: _____

21   Food: $_____    Clothing: _____

22   Charge Accounts:

23   Name of Account        Monthly Payment        Total Owed on This Acct.

24   _____    $_____    $_____

25   _____    $_____    $_____

26   _____    $_____    $_____

27   9.    Do you have any other debts? (List current obligations, indicating amounts and to whom

28   they are payable. Do not include account numbers.)
     PRIS. APPLIC. TO PROC. IN FORMA

1 _____

2 _____

3  10.    Does the complaint which you are seeking to file raise claims that have been presented in

4  other lawsuits?                                    Yes _____ No  X

5  Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in which

6  they were filed.

7 _____

8 _____

9      I consent to prison officials withdrawing from my trust account and paying to the court the

10  initial partial filing fee and all installment payments required by the court.

11      I declare under the penalty of perjury that the foregoing is true and correct and understand

12  that a false statement herein may result in the dismissal of my claims.

13

14  4 - 10 - 08                 John KOliver Dunlar

15      DATE                              SIGNATURE OF APPLICANT

16

17

18

19

20

21

22

23

24

25

26

27

28

Probation officer Locke Oakland Probation officer made out A Probation Report stating that I committed A murder and an attempted murder and beat it on a tech. There was "No" murder or attempted murder even committed. This Probation Report has been used numerous times at my BPT hearings and I've been questioned every time and told the BPT it was false and the BPT members would use this fraudulent info on the Probation Report as a silent beef to deny me parole. Counselors at Cal. Patrick stated that they checked this info out and was gonna remove it out of my file and put a chrono in my file stating that the info is false, but never did this. My hearing in 2005 also used this fraudulent info in the Probation Report again and questioned me again about the murder and attempted murder that the P.O. said I beat on a tech. I explained again that it was false, the info is fraudulent info, this info is fraudulent and is being used against me as a what is called a silent beef, what it really is, is fraudulent info. I never made out a Prob Report, and this info in the Prob Report is fraudulent, and I should be taken back to the BPT and given a parole date. I've never been charged or convicted of a violent crime, this Kidnap Robb, and Robb is considered a violent crime but there was no physical violence involved. I've never been convicted of violence.

John E. Dunlap C16558

# EXHIBIT A

```
 1          COMMISSIONER BENTLEY:  No, I don't have any.
 2          PRESIDING COMMISSIONER GIAQUINTO:  Mr. Stanton.
 3          ATTORNEY STANTON:  I have no questions.
 4          PRESIDING COMMISSIONER GIAQUINTO:  All right.
 5     Closing.
 6          ATTORNEY STANTON:  Well, what I would like to
 7     kind of focus on is Mr. Dumlao is changed -- I think
 8     it has been occurring over, especially, the last
 9     decade.  Regarding the commitment offense, I don't
10     think it clearly (inaudible) planned this to be a
11     kidnaping.  He was high at the time he was suffering
12     from drug addiction.  I think he has overcome that
13     adamantly.  He didn't physically abuse the victim
14     here.  I think the motivation, basically, was to try
15     to (inaudible).  Not that that is a valid reason that
16     everybody who has taken drugs does commit a crime, but
17     it is definitely a factor that should be considered.
18     As he has expressed here, and all along, he is very
19     sorry that he did this not only because he came to
20     prison, but he is sorry for the victim.  He
21     acknowledges it was the wrong thing to do.  He does
22     take responsibility.  He doesn't offer too many
23     excuses.  His juvenile record is fairly (inaudible)
24     acts of violence.  The adult convictions, murder, were
25     considered acts of violence.  But they weren't for
26     assaulting, physically assaulting (inaudible), but not
27     for actually hitting or striking or anything like
```

*[handwritten notes in margin: "Hurl violent frequent probation Report", "(No)", "k Not true", "murder"]*

*[handwritten at bottom: Parole Board Hearing Transcript]*

# EXHIBIT B

John Dunlap.
CIL555 OAKLAND

CRIMINAL HISTORY

| Offense Date | Offense | Disposition |
|---|---|---|
| 4/14/64<br>Fremont | G.T. | Convicted 488 PC-PT, un-<br>spec. prob. |
| 3/4/66<br>Oakland | 459 PC (Burglary). | 6/10/66, convicted, 3 yr.<br>probation, 106 days jail<br>susp., $56.00 fine. |
| 4/8/67<br>Arizona | Theft of Interstate<br>Shipment. Federal Priso<br>to Safford ARIZONA | Nine months. |
| 4/1/68<br>Oakland | 495 PC (malicious<br>mischief). | Convicted, ten days. |
| 5/20/68<br>El Cerrito | P.T. | 12/17/68, PC conv. PG,<br>$125 fine. |
| 11/26/68<br>Alameda | Warrant charge unspec.<br>— 148 PC, obstructing,<br>resisting public off. | 11/26/78, PC convicted by<br>jury, judgment suspended<br>1 year, 60 days jail. |
| 11/27/68<br>Oakland | 11915 H&S (possession<br>of dangerous drugs,<br>injection kit). | Convicted, 180 days County<br>Jail. |
| 7/31/69<br>Oakland | 4532a PC (escape/charged<br>etc. w/misd.) | 7/31/70, discharged 6 mon.<br>to one year and one dis-<br>missed. |
| 2/27/71<br>San Francisco | 488 PC (Petty theft). | 3/22/71, convicted, $35<br>fine or 5 days. |
| 11/22/71<br>Oakland | 488 PC (petty theft). | 2/18/72, PC conv. PG 484<br>PC-PT, 90 days County Jail,<br>concurrent. |
| 3/2/72<br>Corrections | 459 PC (Burglary, 2nd<br>degree). | 6 months to 15 years,<br>7/9/75, paroled. |
| 11/20/75<br>Alameda | 12021a PC (felon addict<br>possess firearm). | Sentenced. |
| 11/26/79<br>Alameda | 459 PC/F, 2nd degree. | 16 months State Prison. |

The defendant states that he has been in prison in State Prison on
three separate occasions. In the above Criminal History, only two are
represented.

JOHN DUMLAO

| | | | |
|---|---|---|---|
| 11/26/79 | ALAMEDA | 459 PC/F 2ND DEGREE | 16 MOS ST PRIS. PAROLED 11/7/80 |
| 1/19/81 | PD ALAMEDA | 211 PC 2 CTS | 7/27/81: JURY TRIAL GUILTY 2 CTS 211 PC W/USE: 1 CT 209 PC/4 PRIOR FEL CONV. 13 YRS TO LIFE |

- 2 -

**S155236**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re JOHN KLEVER DUMLAO on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT
FILED

JAN **2 3** 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

MC-275

Name _John Kleven DomLao_

Address _P.O. Box 5101 A-4-215_
_Delano, Calif 93216_

CDC or ID Number _C46555_

SUPREME COURT
FILED

AUG 0 9 2007

Frederick K. Ohlrich Clerk

_____

Deputy

_Calif State Supreme Court_

*(Court)*

_John Kleven DumLao_
Petitioner

vs.

_HedGEPeTH, WARDEN_
Respondent

No.

**PETITION FOR WRIT OF HABEAS CORPUS**

# S155236

*(To be supplied by the Clerk of the Court)*

RECEIVED

JUL 2 8 2007

^FRK SUPREME COUP

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999). Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

| WEST GROUP |
| Official Publisher |

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

☐ A conviction                    ☒ Parole

☐ A sentence                     ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

☐ Other *(specify):* _____

1. Your name: __John Klever Dunlao__

2. Where are you incarcerated? __Centinela State Prison__

3. Why are you in custody?  ☒ Criminal Conviction  ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

__KIDNAP for Robbery. Use of A firearm, Robbery; Use of__
__firearm__

b. Penal or other code sections: __209 B; 211__

c. Name and location of sentencing or committing court __Alameda County Superior Court__
__Oakland, Calif__

d. Case number: __ALA 71832__

e. Date convicted or committed: __Sept 23, 1981__

f. Date sentenced: __Sept 1981__

g. Length of sentence: __Life__

h. When do you expect to be released? __Unknown__

i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No. If yes, state the attorney's name and address:
__Bob Braverman, Address Unknown At this time__
_____

4. What was the LAST plea you entered? *(check one)*

☒ Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☒ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

the BOARD of Prison terms hearing Denied me procedural and substantive due process under the Fifth and Fourteenth Amendments; AND I was Denied equal protection under the Fourteenth Amendment.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

1.) Juvenile Record - Petitioners record as a juvenile involved mostly Property crimes, there was not any violence involved and nobody was ever injured in any of the crimes involving Petitioner as a juvenile, Petitioner believes this is a mitigating factor that was not considered by the B.P.T. in evaluating Petitioner's suitability for Parole, the B.P.T. hearing arbitrarily denied the consideration of this information the B.P.T. actions failed to follow and adhere to their own matrix guidelines that establish the criteria that the B.P.T. shall use when determining an inmate(s) suitability for Parole,

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

United States Constitution - Fifth Amendment
United States Constitution Fourteenth Amendment.

7. Ground 2 or Ground _____ (if applicable):

The Board of Prison terms hearing denied me procedural and substantive due Process under the fifth and fourteenth Amendments; and I was Denied equal protection under the fourteenth Amendment.

a. Supporting facts:

2.) Adult Record. Petitioner's crimes as an adult were non-violent except for the current committment. The current committment did involve the use of a handgun but non of the victims were injured during the commission of the crimes. The fact that no victims were injured is an important mitigating factor that should weigh in Petitioner's favor in considering Parole. The B.P.t. hearing arbitrarily denied the consideration of this information. The B.P.t. actions failed to follow and adhere to their matrix guidelines that established the criteria that the B.P.t. shall use when determining an inmate(s) suitability for Parole. No Probation report was made out by inmate Dunbar but the Probation Dept sent a Probation report to C.D.C. which has false and Fraudulent information in it which was used at the B.P.t hearing to make a Decision. the counselors at Calipatria state Prison were suppose to remove this Probation report which has false and Fraudulent information in it and was used at the B.P.t. Hearing in Deciding Parole consideration.

b. Supporting cases, rules, or other authority:
united states constitution - fifth Amendment
united states constitution - Fourteenth Amendment

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☐ No.    If your answer is yes, give the following information about your appeal:

Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court")
N / A

Result _____    Date of decision _____

Case number or citation of opinion, if known _____

Issues raised: a. _____

b. _____

c. _____

d. _____

Were you represented by counsel on appeal? ☐ Yes. ☐ No.  If yes, state the attorney's name and address, if known.

_____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.  Result ____ N / A ____

Date of decision _____ Case number or citation of opinion, if known _____

Issues raised: a. _____

b. _____

c. _____

d. _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: ____
N / A

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In Re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)
Explain what administrative review you sought or explain why you did not seek such review:
N / A

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you previously filed any petitions, applications, or motions with respect to this conviction, commitment, or Issue in any court?  ☒ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.

13. (1) Name of court ___Board Of Prison Terms Appeal___

Nature of proceeding (for example, "habeas corpus petition") ___B.P.T. hearing appeal___

Issues raised: a. ___Same as 1 through 6 herein___

b. _____

. c. _____

Result *(Attach order, if available)* ___DENIED___   Date of decision ___12-07-98___

(2) .Name of court _____

. . . Nature of proceeding_____

. Issues raised: .a. _____

. b. _____

c. _____

Result *(Attach order, if available)* _____ Date of decision _____

. _ . *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result.
    N / A

_____

15. . Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)
    N / A

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known.

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. *If yes, explain.*

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court.
    N / A

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: *10 -13-05*                              _____
                                                (Signature of Petitioner)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

**FILED**

APR 1 9 2007

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
DEPUTY

In re JOHN KLEVER DUMLAO,

on Habeas Corpus.

A117420

(Alameda County
Super. Ct. No. 71832B)

BY THE COURT:[*]

The petition for a writ of habeas corpus is denied.

APR 19 2007

Dated: _____          PARRILLI, J. _____ Acting P.J.

_____
[*] Parrilli, Acting P.J., Pollak, J. & Siggins, J.

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS    E-filing

In the matter of the Life )
Term Parole Consideration )
Hearing of:                )
                           )        CDC Number C-16555
JOHN DUMLAO                )
                           )
_____  )

**CV 08 2988**

**INMATE COPY**

*SI*

*(PR,*

CENTINELA STATE PRISON

IMPERIAL, CALIFORNIA

JULY 6, 2005

1:14 P.M.

PANEL PRESENT:

Mr. Philip Inglee, Presiding Commissioner
Ms. Alejandro Armenta, Deputy Commissioner

OTHERS PRESENT:

Mr. John Dumlao, Inmate
Ms. Linda Ludwig, Attorney for Inmate
Correctional Officer Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No      See Review of Hearing
_____  Yes     Transcript Memorandum

JA Willis, Peters Shorthand Reporting

ii

## INDEX

PAGE

Proceedings........................................... 1

Case Factors......................................... 1

Pre-Commitment Factors............................. 14

Post-Commitment Factors............................ 35

Parole Plans........................................ 21

Closing Statements................................. 46

Recess.............................................. 47

Decision............................................ 48

Adjournment......................................... 53

Transcriber Certification.......................... 54

--oOo--

1

1          **P R O C E E D I N G S**

2          **PRESIDING COMMISSIONER INGLEE:**  Can you

3   give me the pronunciation of your last name

4   please?

5          **INMATE DUMLAO:**  D-U-M-L-A-Y-O (phonetic).

6          **PRESIDING COMMISSIONER INGLEE:**  Dumlayo?

7          **INMATE DUMLAO:**  Yes Sir.

8          **PRESIDING COMMISSIONER INGLEE:**  This is a

9   Subsequent Parole Consideration Hearing for John

10  Dumlao, CDC number C-16555.  Today's date is

11  July the 6th, 2005.  The time is 1:14 p.m.

12  We're located at Centinela State Prison.  The

13  inmate was received on 9/23 of '81, committed

14  from Alameda County.  The life term began on 5/5

15  of 1988.  The inmate's minimum eligible parole

16  date is 5/5 of '95.  The controlling offense in

17  which the inmate has been committed is set forth

18  in Case 71832, charging five Counts of violation

19  of Penal Code Section PC209B, kidnap for

20  robbery.  The inmate received a term of life

21  term.  This hearing is being tape-recorded, and

22  for the purpose of voice-identification each of

23  us will be required to state our first and last

24  names, spelling our last name.  When it comes to

25  the inmate's turn, after you spell your last

26  name, state your CDC number.  My name is Philip

27  Inglee, I-N-G-L-E-E, Commissioner.

2

1        **DEPUTY COMMISSIONER ARMENTA:**  And I'm
2   Alejandro Armenta, A-R-M-E-N-T-A, Deputy
3   Commissioner.
4        **ATTORNEY LUDWIG:**  Linda A. Ludwig, L-U-D-
5   W-I-G, attorney for Mr. Dumlao.
6        **INMATE DUMLAO:**  (indiscernible) Dumlao
7   C-16555.
8        **PRESIDING COMMISSIONER INGLEE:**  And spell
9   your last name.
10        **INMATE DUMLAO:**  Oh, D-U-M-L-A-O.
11        **PRESIDING COMMISSIONER INGLEE:**  Thank
12   you.  We also have one correctional peace
13   officer in the room who is here for security
14   purposes.  Mr. Dumlao, before you is an ADA and
15   Self-Rights Identification Statement, which I'll
16   ask you to read out loud if you would please.
17        **INMATE DUMLAO:**  "The Americans
18             with Disabilities Act, ADA, is a
19             law to help people with
20             disabilities.  Disabilities are
21             problems that make it harder for
22             some people to see, hear, breathe,
23             talk, walk, learn, think, work, or
24             take care of themselves than it is
25             for others.  Nobody can be kept
26             out of public places or activities
27             because of a disability.  If you

3

```
 1          have a disability, you have the
 2          right to ask for help to get ready
 3          for your BPT Hearing, get to the
 4          hearing, talk, read forms and
 5          papers, and understand the hearing
 6          process.  BPT will look at what
 7          you ask for to make sure that you
 8          have a disability that is covered
 9          by the ADA and that you have asked
10          for the right kind of help.  If
11          you do not get help or if you
12          don't think you got the kind of
13          help you need, ask for a BPT 1074
14          Grievance Form.  You can also get
15          help to fill it out."
16          PRESIDING COMMISSIONER INGLEE:  Do you
17  understand what you read?
18          INMATE DUMLAO:  Yes Sir.
19          PRESIDING COMMISSIONER INGLEE:  Thank
20  you.  Now the record also reflects that you
21  signed a BPT Form 1073, which is a Reasonable
22  Accommodations Notice and Request in accordance
23  with the provisions of the Americans with
24  Disabilities Act of 4/26 of 2005.  You indicated
25  at the time that you do not have a disability as
26  defined under ADA; is that true?
27          INMATE DUMLAO:  Yes, Sir.
```

4

1          **PRESIDING COMMISSIONER INGLEE:**  Is that

2    information still current and correct?

3          **INMATE DUMLAO:**  Yes.

4          **PRESIDING COMMISSIONER INGLEE:**  Do you

5    have any problems walking up or down stairs or

6    for a distance of 100 yards or more?

7          **INMATE DUMLAO:**  No Sir.

8          **PRESIDING COMMISSIONER INGLEE:**  Do you

9    need glasses or magnifying devices in order to

10   see or read documents?

11         **INMATE DUMLAO:**  Uh, yes Sir, glasses.

12         **PRESIDING COMMISSIONER INGLEE:**  Do you

13   have glasses with you right now?

14         **INMATE DUMLAO:**  No Sir.

15         **PRESIDING COMMISSIONER INGLEE:**  Are you

16   able to see well enough to be able to

17   participate in this hearing?

18         **INMATE DUMLAO:**  Yes Sir.

19         **PRESIDING COMMISSIONER INGLEE:**  Okay.  Do

20   you have any hearing impairments?

21         **INMATE DUMLAO:**  No Sir.

22         **PRESIDING COMMISSIONER INGLEE:**  Have you

23   ever been included in the CCCMS, Triple CMS, or

24   an EOP Program?

25         **INMATE DUMLAO:**  No Sir.

26         **PRESIDING COMMISSIONER INGLEE:**  Do you

27   know what these programs are?

```
1          INMATE DUMLAO:  Yes Sir.
2          PRESIDING COMMISSIONER INGLEE:  Thank
3   you.  Have you ever taken psychotropic
4   medication either in prison or on the streets?
5          INMATE DUMLAO:  No, Sir.
6          PRESIDING COMMISSIONER INGLEE:  How far
7   did you go in school before you went to prison?
8          INMATE DUMLAO:  I graduated from
9   (indiscernible) High School in 1964.
10          PRESIDING COMMISSIONER INGLEE: Okay.
11   Have you taken any special education classes
12   while growing up?
13          INMATE DUMLAO:  Special Education
14   classes?
15          PRESIDING COMMISSIONER INGLEE:  These are
16   classes generally given to youngsters who have
17   learning disabilities?
18          INMATE DUMLAO:  No Sir.
19          PRESIDING COMMISSIONER INGLEE:  Okay.  Do
20   you suffer from any disability that would
21   prevent you from participating in today's
22   hearing?
23          INMATE DUMLAO:  No Sir.
24          PRESIDING COMMISSIONER INGLEE:
25   Counselor, do you have any comments or concern
26   regarding your client's ADA rights?
27          ATTORNEY LUDWIG:  No.
```

6

```
1        PRESIDING COMMISSIONER INGLEE:  This
2   hearing is being conducted pursuant to Penal
3   Code Sections 3041, 3042, and the rules and
4   regulations of the Board of Prison Terms
5   governing parole consideration hearings for life
6   inmates.  The purpose of today's hearing is to
7   consider your suitability for parole.  In doing
8   so, we will consider the number and nature of
9   the crimes you were committed for, your prior
10  criminal and social history, your behavior and
11  programming since your commitment.  We have had
12  an opportunity to review your Central File and
13  your prior hearing transcripts.  You'll be given
14  an opportunity to correct and clarify the
15  records.  We will consider your progress since
16  your commitment and since your last hearing.
17  Your updated counselor's report and
18  psychological report will also be considered.
19  Any change in parole plans should be brought to
20  our attention.  We will reach a Decision today
21  and inform you whether or not we will find you
22  suitable for parole and the reason for our
23  Decision.  If you are found suitable for parole,
24  the length and time of your confinement will be
25  explained to you.  This hearing will be
26  conducted in two phases.  I will discuss with
27  you the crime that you were committed for, your
```

7

1    prior criminal and social history, your parole

2    plans, and any letters of support or opposition

3    that may be in the file.  Deputy Commissioner

4    Armenta will discuss with you your progress

5    since your commitment, your counselor's report,

6    and your psychological evaluation.  Once that is

7    concluded, Commissioners, the District Attorney,

8    and we do not have one present today and your

9    attorney will be given an opportunity to ask you

10   questions.  The questions from the District

11   Attorney if they were here would go through the

12   Chair, and your answers will be directed back to

13   the Panel.  Before we recess for deliberations,

14   your attorney, and you will be given an

15   opportunity to make a final statements regarding

16   your parole suitability.  These statements

17   should be directed as to why you feel you are

18   suitable for parole.  We will then recess, clear

19   the room and deliberate.  Once we have completed

20   our deliberation we will resume the hearing and

21   announce our Decision.  The California Code of

22   Regulations states that regardless of time

23   served a life inmate shall be found unsuitable

24   for and denied parole if in the judgment of the

25   Panel the inmate would pose an unreasonable risk

26   of danger to society if released from prison.

27   You have certain rights.  These rights include

8

1  the right of timely notice of the hearing and
2  the right to review your Central File, and the
3  right to present relevant documents. Counselor,
4  has your inmate's rights been met in this
5  regard?

6        **ATTORNEY LUDWIG:** Yes.

7        **PRESIDING COMMISSIONER INGLEE:** You also
8  have the right to be heard by an impartial
9  Panel. Do you object to any member of this
10 Panel?

11       **INMATE DUMLAO:** No Sir.

12       **PRESIDING COMMISSIONER INGLEE:**
13 Counselor, do you object to any member of this
14 Panel?

15       **ATTORNEY LUDWIG:** No.

16       **PRESIDING COMMISSIONER INGLEE:** You will
17 receive a copy of our written decision today.
18 That decision is subject to review by the
19 Decision Review Unit and by an entire Board
20 meeting as a body. It will become effective
21 within 120 days. It is also subject to review
22 by the Governor. A copy of the tentative
23 decision and a copy of the transcript will be
24 sent to you. As of May 1st, 2004, there were
25 major changes limiting your former rights to
26 appeal Board decisions or actions directly to
27 the Board. The old Board regulations were

9

1    repealed.  The current policy is entitled
2    Administrative Appeals Correspondence and
3    Grievances Concerning Board of Prison Terms
4    Decisions.  It is available in the prison
5    library for your review.  You are not required
6    to admit your offense or discuss your offense if
7    you do not wish to; however, this Panel does
8    accept as true the findings of the Court, and
9    you are invited to discuss the facts and
10   circumstances of the offense if you desire.  The
11   Board will review and consider any prior
12   statements you have made regarding the offense
13   in determining your suitability for parole.
14   Deputy Commissioner, is there confidential
15   material in the file?
16        **DEPUTY COMMISSIONER ARMENTA:**  None.
17        **PRESIDING COMMISSIONER INGLEE:**  I have
18   passed a Hearing Checklist marked Exhibit One to
19   your attorney and to ensure that we're all
20   proceeding with the same set of documents.  And
21   do you have that document?
22        **ATTORNEY LUDWIG:**  I do.
23        **PRESIDING COMMISSIONER INGLEE:**  Are there
24   any additional documents to be submitted?
25        **ATTORNEY LUDWIG:**  No, or yes?
26        **INMATE DUMLAO:**  The letters?
27        **ATTORNEY LUDWIG:**  We're not sure if some

10

 1   of the letters made it into the file.  And we

 2   have a couple of letters.

 3        **PRESIDING COMMISSIONER INGLEE:**  Well,

 4   let's take them one - - let's go through one at

 5   a time and see if we have some?  Do we have

 6   anything else, Commissioner on that?

 7        **DEPUTY COMMISSIONER ARMENTA:**  I have one

 8   letter from his former wife, concerning where

 9   you would live on parole?

10        **INMATE DUMLAO:**  Yes.

11        **PRESIDING COMMISSIONER INGLEE:**  I have

12   that letter.  I have a letter for the District

13   Attorney (indiscernible).

14        **ATTORNEY LUDWIG:**  Okay, we have another

15   letter from (indiscernible).

16        **INMATE DUMLAO:**  Yes.

17        **PRESIDING COMMISSIONER INGLEE:**  Counselor

18   are there any preliminary objections?

19        **ATTORNEY LUDWIG:**  No.

20        **PRESIDING COMMISSIONER INGLEE:**  Will the

21   inmate be speaking to the Panel?

22        **ATTORNEY LUDWIG:**  Yes.

23        **PRESIDING COMMISSIONER INGLEE:**  In that

24   case would you please put your right hand up?

25   Do you solemnly swear or affirm that the

26   testimony you give at this meeting will be the

27   truth, the whole truth, and nothing but the

11

1   truth?

2         **INMATE DUMLAO:**  Yes Sir.

3         **PRESIDING COMMISSIONER INGLEE:**  Thank

4   you.  If there's no objections, we will

5   incorporate by reference the Statement of Fact

6   from the probation officer's report, page two.

7         **ATTORNEY LUDWIG:**  No objection.

8         **PRESIDING COMMISSIONER INGLEE:**  Mr.

9   Dumlao, let's take a minute, and if you would

10  tell us about the crime.  It was a very

11  complicated crime.  I would like to hear your

12  side of it.

13        **INMATE DUMLAO:**  I was hooked on drugs and

14  I was supporting my drug habit.  And uh - -

15        **PRESIDING COMMISSIONER INGLEE:**  What kind

16  of drugs were you on?

17        **INMATE DUMLAO:**  Heroin.

18        **PRESIDING COMMISSIONER INGLEE:**  Heroin?

19        **INMATE DUMLAO:**  Yes Sir.  And I was

20  committing these robberies to support my habit

21  Sir.  No one was ~~there~~ hurt and I realized

22  this is a violent crime, but there was no

23  physical violence and I am sorry for

24  (indiscernible) these crimes.  I wrote Mr.

25  Capelino (phonetic) a letter of apology, but it

26  was sent back by CDC saying I couldn't write

27  him.

12

1      **PRESIDING COMMISSIONER INGLEE:**  You can
2  write a letter, (indiscernible), but it's got to
3  go through the District Attorney's office.

4      **INMATE DUMLAO:**  Oh, well they sent it
5  back.

6      **PRESIDING COMMISSIONER INGLEE:**  You need
7  to talk to your counselor about that, just have
8  them direct it, if you don't get a date today,
9  it's something you may want to consider.  How
10  did it end up being a kidnapping?

11      **INMATE DUMLAO:**  Uh, as we were leaving I
12  asked Mr. Capelino (phonetic) where is the rest
13  of the money?  He said take me home, he says
14  I've got a few thousand dollars, some rare coins
15  and some cash.  So we discussed it to see if we
16  was going to take him home.  We asked him how
17  far he lived and he said only about a mile.  And
18  we said all right.  And we took him, we drove
19  him to his house and we got the money.  I
20  handcuffed him, I left the keys in the handcuffs
21  and told him to give us ten minutes and then
22  call the police, and we left.  But it was, we
23  never hurt nobody.

24      **PRESIDING COMMISSIONER INGLEE:**
25  Apparently taking him for a ride was not a smart
26  thing to do.

27      **INMATE DUMLAO:**  No Sir.

13

1      **PRESIDING COMMISSIONER INGLEE:**  Did you

2  know at the time that it was going to end up

3  being a kidnapping charge?

4      **INMATE DUMLAO:**  No Sir.  When I was first

5  arrested they charged me with central kidnap and

6  a 207 kidnap and 211 robbery.  But when I

7  refused to the plea bargain, first it was eight

8  years and then he dropped it to six years.  When

9  I refused that, then they remanded the complaint

10  to kidnap robbery.

11      **PRESIDING COMMISSIONER INGLEE:**  Well you

12  put him in a vehicle and you took him someplace.

13      **INMATE DUMLAO:**  Yes Sir.

14      **PRESIDING COMMISSIONER INGLEE:**  With the

15  intent to get more money.

16      **INMATE DUMLAO:**  Yes Sir.

17      **PRESIDING COMMISSIONER INGLEE:**  All

18  right, that was your mistake.

19      **INMATE DUMLAO:**  Yes Sir.

20      **PRESIDING COMMISSIONER INGLEE:**  The whole

21  mistake was robbing him to begin with.

22      **INMATE DUMLAO:**  Right.

23      **PRESIDING COMMISSIONER INGLEE:**  But it's

24  not the reason why we're here.

25      **INMATE DUMLAO:**  Yes Sir.

26      **PRESIDING COMMISSIONER INGLEE:**  I guess

27  you're very remorseful for the whole thing under

14

1  the circumstances.

2       **INMATE DUMLAO:**  Yes Sir.

3       **PRESIDING COMMISSIONER INGLEE:**  Well.

4       **INMATE DUMLAO:**  And in 25-years I've lost

5  my seven family members, it wasn't worth it when

6  I was hooked on drugs.

7       **PRESIDING COMMISSIONER INGLEE:**  And we

8  will go into it further, but you have a rather

9  impressive list of 115's.  So your concerns have

10  continued while you've been in prison.

11       **INMATE DUMLAO:**  I had nine years clean

12  from 1993 until 2002.  And, uh - -

13       **PRESIDING COMMISSIONER INGLEE:**  Two-

14  thousand three.

15       **INMATE DUMLAO:**  And that's when I got my

16  last one, but I had nine years, going on ten

17  years.

18       **PRESIDING COMMISSIONER INGLEE:**  Yeah.

19  Okay, well let's move on with this.  Prior

20  criminality, in your juvenile record

21  (indiscernible) first arrest was at the age of

22  16 when he was arrested for grand theft, another

23  arrest for receiving stolen property and

24  burglary and numerous vehicle code violations

25  all led to (indiscernible) probation.  You have

26  an impressive list of adult convictions.  On

27  4/14/ '64 arrested receiving stolen property,

15

1  found guilty of petty theft.  On 3/04 of 1966 of

2  burglary found guilty.  On 4/8 of 1967 arrested

3  in Arizona for theft of interstate shipment,

4  found guilty, sentenced to 9-months Federal

5  Prison.  On 4/01 1968 arrested malicious

6  mischief and vandalism, found guilty, sentenced

7  to ten days prison, jail.  On 5/20 1968 arrested

8  for theft, found guilt-y, fined $120.00 and

9  $5.00.  On 11/26 1968 arrested for selling tier

10  gas weapons and obstructing and resisting police

11  officers, found guilty and the Judgement

12  suspended.  On 11/27 1968 arrested for

13  possession of dangerous injection kit.  What was

14  a dangerous injection kit?

15      **INMATE DUMLAO:**  A syringe.

16      **PRESIDING COMMISSIONER INGLEE:**  For

17  drugs?

18      **INMATE DUMLAO:**  Yes Sir.

19      **PRESIDING COMMISSIONER INGLEE:**  One

20  hundred and eighty days in jail.  On 7/31 1969

21  arrested for escape from the Saborita (phonetic)

22  Jail, found guilty of a misdemeanor.  On 2/27 of

23  1975 arrested for petty theft, 90-days in County

24  Jail.  On 4/01 1971 arrested for petty theft,

25  21-days in jail, one-year probation.  On 5/05

26  (indiscernible) six, 1971 arrested for

27  disturbing the peace, received 90-days in jail.

16

1   How does someone get 90-days in jail for

2   disturbing the peace?

3        **INMATE DUMLAO:**   What year was that?   I

4   don't even remember.

5        **PRESIDING COMMISSIONER INGLEE:**   It was

6   1971.  I'm just curious what you did to disturb

7   the peace that gets you three months in jail,

8   that's all.

9        **INMATE DUMLAO:**   I can't even remember

10  that one.

11       **PRESIDING COMMISSIONER INGLEE:**   Okay well

12  that's not why we're here, but I just was

13  curious as to what that might have been.

14  (indiscernible) 22 of 1971, petty theft, 90-days

15  in jail.  March 22nd 1971 arrested for burglary,

16  six months to 15-years, received six months to

17  15-years paroled.  In 1975, November 29th, 1975

18  felony addiction possession, firearms, receiving

19  stolen property, 60-months probation and 365

20  days in jail.  January 29th, 1975 arrested

21  felony addiction and possession of firearm -

22  addict in possession of firearms, was found

23  guilty, he received 180-days in jail.  February

24  6th, 1980 arrested for grand theft property was

25  found guilty of burglary.  And then in 1981 the

26  offense that you are currently incarcerated for.

27  That's a lot of activity in a relatively short

17

1  period of time, you stayed very busy.

2       **INMATE DUMLAO:** Yes Sir.

3       **PRESIDING COMMISSIONER INGLEE:** I assume

4  there must have been some times there you just

5  weren't caught.

6       **INMATE DUMLAO:** I wasn't stealing all the

7  time Sir. I was working at time too.

8       **PRESIDING COMMISSIONER INGLEE:** But

9  you've got to admit though, you kept pretty

10 busy.

11      **INMATE DUMLAO:** Yes Sir.

12      **PRESIDING COMMISSIONER INGLEE:**

13 (indiscernible) inside or observations that you

14 were concerned about your list of arrests?

15      **INMATE DUMLAO:** Well, I was a lot younger

16 and I'm more mature now. And I'm ready, I'm

17 ready to be paroled Sir. I can make a parole.

18 I've got everything going for me right now.

19 I've got family backing, I've got a potential

20 job.

21      **PRESIDING COMMISSIONER INGLEE:** Well,

22 we'll go through all those things, but first,

23 unfortunately we have to go through your prior

24 list of crimes. All right, let's talk about

25 your personal history. (indiscernible) was born

26 on January 29th, 1964 and what's the name of the

27 community you were ~~living~~ in the ~~██████████~~?

18

1        **INMATE DUMLAO:**  Mantica, Tejeres Migante
2    Mantica (phonetic).

3        **PRESIDING COMMISSIONER INGLEE:**  Yeah,
4    okay, ~~Mantica~~, I've been there.
5    (indiscernible) between (indiscernible) and an
6    American serviceman.  His father died when
7    (indiscernible) was only two-years old.  His
8    mother re-married and his stepfather adopted him
9    and his two older sisters.  His mother's
10   marriage produced two more children.
11   (indiscernible) married in 1965 and was divorced
12   in 1972.  This union produced two children and
13   on December 18th, 1979 he remarried but got a
14   divorce in 1982.  (indiscernible) 1979 while
15   housed in the California Correctional Institute
16   (indiscernible) claims to have worked as his
17   housepainter, but due to his current addiction
18   he was not able to attend steady employment.
19   So, apparently you've had some, obviously you
20   had heroin problems, did you use any other drugs
21   besides heroin?

22       **INMATE DUMLAO:**  Yes Sir, I was using
23   methamphetamine, no not this time Sir, but
24   before when I first started I was using
25   methamphetamine.

26       **PRESIDING COMMISSIONER INGLEE:**  Is that
27   how you got started, meth?

19

1        **INMATE DUMLAO:** Yes Sir,

2        **PRESIDING COMMISSIONER INGLEE:** Yeah,

3    (indiscernible) you've had some internal

4    problems here.  You have enemies within the

5    prison?

6        **INMATE DUMLAO:** I've never claimed any

7    enemies Sir.

8        **PRESIDING COMMISSIONER INGLEE:** It said

9    (indiscernible) placed in (indiscernible) in

10   5/24 of 2002 and he is still housed there due to

11   enemies.

12       **INMATE DUMLAO:** I've never claimed any

13   enemies.

14       **PRESIDING COMMISSIONER INGLEE:** Do you

15   (indiscernible) the time you were working?

16       **INMATE DUMLAO:** I guess they considered

17   them enemies, cause uh, well I was told that one

18   guy said that he had a problem with me and

19   that's why they kept us apart.  But I never

20   claimed any enemies.

21       **PRESIDING COMMISSIONER INGLEE:** Okay.

22   (indiscernible) your parole plans.

23       **INMATE DUMLAO:** (Inmate whispers).

24       **PRESIDING COMMISSIONER INGLEE:** I'm

25   sorry?  Getting back to your enemies for just a

26   moment, there is a list of ten, do you want me

27   to go through those?

20

1      **DEPUTY COMMISSIONER ARMENTA:** We can't
2  say their names.
3      **PRESIDING COMMISSIONER INGLEE:** Oh this
4  is confidential?
5      **DEPUTY COMMISSIONER ARMENTA:** Yeah,
6  Confidential.
7      **PRESIDING COMMISSIONER INGLEE:** Okay, all
8  right. Apparently you don't want to discuss
9  that and that's fine.
10     **INMATE DUMLAO:** I do want to discuss it.
11     **PRESIDING COMMISSIONER INGLEE:** All
12  right, let's go ahead.
13     **INMATE DUMLAO:** I don't - - I've never
14  claimed any enemies. They put a - - an inmate
15  at Tahatchapi was found with a list of guys and
16  since he was our friend, they put all them
17  enemies, seven people on our list in our files.
18  I don't even know them guys. They could walk
19  buy me and I wouldn't know them Sir. That's
20  what they did, you know, if you're - - that's
21  what they did, that's how I got seven enemies
22  right there. I don't even know them guys, they
23  could walk - - they could be in here, and I
24  wouldn't know it.
25     **PRESIDING COMMISSIONER INGLEE:** All
26  right. Are these enemies here in this prison,
27  or in other prisons?

21

1        **INMATE DUMLAO:**  No, others.

2        **PRESIDING COMMISSIONER INGLEE:**  Other
3    prisons?

4        **INMATE DUMLAO:**  Yeah.

5        **PRESIDING COMMISSIONER INGLEE:**  All
6    right, then I don't want to take up all day on
7    that, I just wanted to, if in fact you were
8    having an ongoing problems with people here, I
9    wanted to know about it.

10       **INMATE DUMLAO:**  I, I, there's at least
11   eight of them people I don't even know of.

12       **PRESIDING COMMISSIONER INGLEE:**  Yeah.
13   Are you still planning to go to, do you want
14   through the Delancey (phonetic) Street Program
15   in San Francisco?

16       **INMATE DUMLAO:**  Sir, I'm going to parole
17   with my ex-wife and her daughter and I'm going
18   to get in an outpatient drug program to make
19   sure I stay off heroin.

20       **PRESIDING COMMISSIONER INGLEE:**  All
21   right.  How long have you, are you going to NA
22   now?

23       **INMATE DUMLAO:**  Uh, I went to NA, they
24   didn't, they haven't had it here, it just
25   started right now, but they haven't had it here
26   since I've been here.  I've been here two years
27   and I - - but at Calipatria State Prison I went

22

1    for 18-months AA, NA, I have certificates right
2    here.
3              **PRESIDING COMMISSIONER INGLEE:**  Okay,
4    well, Mr. Armenta will go through that.
5              **INMATE DUMLAO:**  Okay.
6              **DEPUTY COMMISSIONER ARMENTA:**  Can I have
7    it?
8              **INMATE DUMLAO:**  Yeah, (indiscernible)
9    letters of support, and all that:
10             **PRESIDING COMMISSIONER INGLEE:**  Do you
11   have more letters here that I don't have?
12             **INMATE DUMLAO:**  Excuse me?
13             **PRESIDING COMMISSIONER INGLEE:**  Do you
14   have letters of support here that I do not have.
15             **DEPUTY COMMISSIONER ARMENTA:**  I didn't
16   know you had copies, she sent me a copy too.
17             **PRESIDING COMMISSIONER INGLEE:**  Okay.
18   But you don't have any additional ones?
19             **DEPUTY COMMISSIONER ARMENTA:**  No.
20             **PRESIDING COMMISSIONER INGLEE:**  Mr. - -
21             **INMATE DUMLAO:**  Uh, no Sir.
22             **PRESIDING COMMISSIONER INGLEE:**  Okay.
23             **INMATE DUMLAO:**  I just have the letter
24   from, also from, Sister Marcella, who is my
25   Coordinator at a Anger Management Program.
26   She's the one - -
27             **PRESIDING COMMISSIONER INGLEE:**

1  (indiscernible) I guess.  This letter hasn't,

2  oh, it - -

3      **DEPUTY COMMISSIONER ARMENTA:**  It has been

4  (indiscernible).

5      **PRESIDING COMMISSIONER INGLEE:**  It's okay

6  for me to look at this?

7      **INMATE DUMLAO:**  Yes Sir.

8      **PRESIDING COMMISSIONER INGLEE:**  Did the -

9  - uh, you'll want this back?

10      **INMATE DUMLAO:**  No I have it.

11      **PRESIDING COMMISSIONER INGLEE:**  Okay,

12  (indiscernible).

13      **DEPUTY COMMISSIONER ARMENTA:**  Yeah that's

14  in his file.

15      **PRESIDING COMMISSIONER INGLEE:**  And your

16  employment plans, you want to go into training

17  at the Delancey (phonetic) Street Program.  I am

18  familiar with Delancey (phonetic) Street in a

19  general nature, but tell me about what you find

20  to do with Delancey (phonetic)?

21      **INMATE DUMLAO:**  Well I write them.  I

22  have a couple letters from them; they told me

23  that if I can get to San Quentin they'd come an

24  interview me.  And if I get accepted that upon

25  my release they'd pick me up.  They said if I

26  could get to Vacaville oR San Quentin, that's

27  the only two places they said they would

24

1    interview me.  And uh - -

2        **PRESIDING COMMISSIONER INGLEE:**  I was at

3    Vacaville last week, I saw Delancey (phonetic)

4    Street at a couple hearings.

5        **INMATE DUMLAO:**  Yes Sir.

6        **PRESIDING COMMISSIONER INGLEE:**  Well,

7    moving from one prison to another is not an easy

8    thing to do.

9        **INMATE DUMLAO:**  I know.  I have a couple

10   letters here from, one is from the Psychiatrist,

11   Dr. Armenta and from the CMO, recommending I go

12   to Vacaville, and they said if I can get the

13   Board to recommend it they'd send me down there.

14   Here's the letters from them.

15       **PRESIDING COMMISSIONER INGLEE:**

16   Unfortunately we cannot - - we can put in here

17   that it's a desirable thing to do, but we can't,

18   we have no influence beyond that point.

19       **INMATE DUMLAO:**  They say if I can to

20   either one of them they'd come see me.

21       **PRESIDING COMMISSIONER INGLEE:**  Is this

22   one of your relatives?

23       **INMATE DUMLAO:**  Uh huh.

24       **PRESIDING COMMISSIONER INGLEE:**  Well of

25   course what he's saying here is on this, what

26   appears, looks like almost a chrono is that he's

27   suggesting this would be done because of the, to

25

1  be closer to your family.

2       **INMATE DUMLAO:**  Well I also have kidney

3  stones and gall stones and that was another

4  reason.

5       **PRESIDING COMMISSIONER INGLEE:**  Cause at

6  Vacaville because of the medical facility?

7       **INMATE DUMLAO:**  Yes Sir.  They have a

8  diet kitchen there.

9       **PRESIDING COMMISSIONER INGLEE:**  All

10 right, well let's just quickly go through the

11 letters you have here.  And this is from Sister

12 Marcella?

13      **INMATE DUMLAO:**  Yes Sir.

14      **PRESIDING COMMISSIONER INGLEE:**  And she

15 is talking about the drug plan that you

16 completed.

17      **INMATE DUMLAO:**  She also, excuse me, but

18 she also wrote a letter to my counselor and it

19 should be in the miscellaneous section.  I seen

20 a copy in there.

21      **PRESIDING COMMISSIONER INGLEE:**  This

22 letter.

23      **INMATE DUMLAO:**  For the Board from Sister

24 Marcella, it was in the miscellaneous section.

25      **PRESIDING COMMISSIONER INGLEE:**  So to let

26 you know how this hearing goes, (indiscernible).

27 Captain Chaplain's Office - -

1      **DEPUTY COMMISSIONER ARMENTA:**  It's right
2  here.
3      **PRESIDING COMMISSIONER INGLEE:**  Oh, this
4  is 1992.  This letter has a new date I think
5  here.
6      **INMATE DUMLAO:**  That was the, excuse me,
7  that was the letter she wrote me and she wrote
8  the Board one right there.
9      **DEPUTY COMMISSIONER ARMENTA:**  All it says
10  is that you did complete the program,
11  (indiscernible) certificate.
12      **PRESIDING COMMISSIONER INGLEE:**  And this
13  is 19 - - this is 2003.  This one is outdated.
14      **INMATE DUMLAO:**  I also have a letter from
15  Delancey Street I gave to Counselor Barrios
16  (phonetic).
17      **PRESIDING COMMISSIONER INGLEE:**  And your
18  (indiscernible) talks about availability but
19  this is a fairly expensive process.
20      **INMATE DUMLAO:**  I wrote about 15
21  programs.
22      **PRESIDING COMMISSIONER INGLEE:**  Well
23  that's good.  I think these outpatient programs
24  are excellent.  Several people who I've
25  recommended for dates, that's one of the things
26  that was good for them because they have a place
27  to go to make an easy transition into free life.

27

1          **INMATE DUMLAO:** Yes Sir.

2          **PRESIDING COMMISSIONER INGLEE:** And they

3    also in many cases were good job opportunities

4    through those kind of things.

5          **INMATE DUMLAO:** Right.

6          **PRESIDING COMMISSIONER INGLEE:** So that's

7    I think what your aiming at is good. What

8    you've got to do is start to update these

9    things.

10         **INMATE DUMLAO:** Yes Sir.

11         **PRESIDING COMMISSIONER INGLEE:** These are

12   1992, 2003 and so if you don't get a date today

13   when you come back in for another hearing you

14   really should have these within the year that

15   your coming into the hearing, within 12-months

16   from that hearing. Okay. We sent out four 3042

17   letter that went out to the various agencies

18   that, either police agencies or Courts dealing

19   with incarceration, they were sent out in June

20   1st of 2005. We received one letter back that

21   was from the District Attorney's Office in

22   Alameda County. "We are recommending that you

23   deny parole to John Dumlao who is a dangerous

24   prisoner. Our conclusion is based on several

25   factors, the factor is the committing offense,

26   the prisoners par of criminality and for the

27   basic reasons why (indiscernible) of commitment

28

1    are frightening on December 29th 1980 the

2    prisoner participated in an armed takeover

3    robbery of an antique store.  The prisoner was

4    (indiscernible) the store (indiscernible) the

5    victim, Mr. Capelino".  Is Mr. Capelino still

6    alive?

7         **INMATE DUMLAO:**  I don't know Sir.

8         **PRESIDING COMMISSIONER INGLEE:**  It sounds

9    like you've tried to make some contact with him.

10        **INMATE DUMLAO:**  The last time I wrote him

11   a letter of apology and they just sent it back.

12   CDC said I couldn't write to him.

13        **PRESIDING COMMISSIONER INGLEE:**  That's

14   true.  They don't want prisoners writing to

15   victims because it can be frightening to some

16   people perhaps to relive frightening events.

17   However, there are ways of doing it.  And I

18   believe the way, if I'm not mistaken, Mr.

19   Armenta is to go through the District Attorney's

20   Office.

21        **DEPUTY COMMISSIONER ARMENTA:**  Yes.

22        **PRESIDING COMMISSIONER INGLEE:**  And then

23   they contact the people and provide, but that

24   process, I must admit I don't know.  You at

25   least should speak to your counselor about that.

26   "the prisoner participated in armed takeover

27   robbery.  Mr. Capelino was handcuffed behind his

29

1   back, forced to lye on the floor (indiscernible)
2   asked where the safe and (indiscernible) were.
3   He indicated he did not have either, prisoner
4   took the victim's wallet money and several
5   pieces.  Prisoner then placed the muzzle of his
6   firearm at the back of Mr. Capelino's head and
7   demanded more property.  Fearing his life, Mr.
8   Capelino told the prisoner that his valuables
9   were at home.  He then took him to his home,
10  once there the prisoner took (indiscernible)
11  cash, (indiscernible) in rare coins and various
12  other articles.  The prisoner (indiscernible)
13  the victim with (indiscernible) telephone cord
14  out of the wall and it was used to tie the
15  victims legs together.  The prisoner was
16  convicted by a jury verdict and sentenced to
17  state prison".  A real extensive, he says you
18  have extensive criminal history that goes back
19  to '64, not only miscellaneous mischief, theft,
20  (indiscernible), petty theft, disturbing the
21  peace, burglary and various other things we've
22  already discussed.  According to the records the
23  prisoner is a sixth timer.  His criminal history
24  shows that he is in fact a career criminal.  The
25  records indicate the prisoner had numerous
26  violations while in the State Prison, most
27  recently a CDC 115, March the 21st of '03 for

30

1  battery, CDC 115 August 16th '03 for mutual
2  combat.  He has prior 115's for battery in 2001
3  participation in a racial riot.  Tell me about
4  the racial riot?

5      **INMATE DUMLAO:**  It was going on for about
6  a year.  And then at about the eighth month,
7  they said, we're going to pick two buildings; I
8  mean one building, two tiers, two cells off each
9  tier.

10     **PRESIDING COMMISSIONER INGLEE:**  This
11  fighting between racial groups was going after
12  individuals.

13     **INMATE DUMLAO:**  Yes Sir, blacks and
14  whites, yeah.

15     **PRESIDING COMMISSIONER INGLEE:**  Okay.

16     **INMATE DUMLAO:**  They picked two blacks,
17  they picked our building, two black cells, two
18  white cells.  They told us to go out to the yard
19  and they had the yard empty except for about 30
20  officers and a video camera.  And they made a
21  line in between the yard.  And they had the four
22  blacks sitting on the other side and four of us
23  over here.  And they said when you give the
24  signal, they said, you guys all go out to the
25  middle of the yard to the line and meet.  And
26  they gave the signal and we all walking towards
27  the line and it's all on video - - and uh, I was

31

1  fighting with two blacks so they dropped it to a
2  mutual combat, they dropped mine to mutual
3  combat.

4      **PRESIDING COMMISSIONER INGLEE:**  You've
5  lost me.  You got a line of black men, you've
6  got a line of white men, and they brought you
7  together and you started fighting?

8      **INMATE DUMLAO:**  We were rushed.  We had
9  to, it's either defend yourself or run.

10     **PRESIDING COMMISSIONER INGLEE:**  That was
11 the intent of what the prison did, or had they
12 planned something else to happen?

13     **INMATE DUMLAO:**  I don't know what they
14 planned to happen but they had 30 officers out
15 there with block guns and tier gas and this
16 video.

17     **PRESIDING COMMISSIONER INGLEE:**
18 (indiscernible) that you're familiar with?  What
19 year was that?

20     **INMATE DUMLAO:**  Two thousand and two.

21     **PRESIDING COMMISSIONER INGLEE:**  All
22 right.

23     **INMATE DUMLAO:**  So they watched the video
24 after in the hole and they dropped it to a
25 mutual combat because it showed that I wasn't
26 the aggressor I was just defending myself.

27     **PRESIDING COMMISSIONER INGLEE:**  It says

32

1   that the prisoner has no clear plan for leading

2   a law abiding life, because of the waiver of

3   hearing stipulation that goes to your past

4   history here at the prison.  It says you're

5   planning to live at Delancey Street report he

6   has additional resident plan to live with Jody

7   Audivanger (phonetic)

8           **INMATE DUMLAO:** - Audivanger (phonetic).

9           **PRESIDING COMMISSIONER INGLEE:**  Okay, his

10  girlfriend in Alameda, which is not even the

11  same county as Delancey Street.  Where exactly

12  does the prisoner really plan to live, San

13  Francisco or Alameda?  It's a good point.  Where

14  do you plan to live?  Because you have a letter

15  here, then you have your concern with Delancey

16  Street.

17          **INMATE DUMLAO:**  Well I'd like to talk to

18  Delancey Street to see if they'll accept me, I'd

19  like to go to Delancey Street if they'll accept

20  me.  But they said the only way they can accept

21  me is if I can get the San Quentin or Vacaville.

22          **PRESIDING COMMISSIONER INGLEE:**  I

23  understand.

24          **INMATE DUMLAO:**  If they'll accept me I'd

25  like to go to Delancey Street.  But they said I

26  have to go down there for the interview.  They

27  can't just accept me.

33

1        **PRESIDING COMMISSIONER INGLEE:**  And you
2    have your girlfriend in Alameda, you have a wife
3    in San Bernardino County?
4        **INMATE DUMLAO:**  Ex-wife.
5        **PRESIDING COMMISSIONER INGLEE:**  Former,
6    okay.
7        **INMATE DUMLAO:**  I've been married three
8    times Sir.
9        **PRESIDING COMMISSIONER INGLEE:**  So you're
10   no longer married to Mrs. Guzman (phonetic)?
11       **INMATE DUMLAO:**  Gosman (phonetic).  No
12   Sir.
13       **PRESIDING COMMISSIONER INGLEE:**  Guzman,
14   Gosman (phonetic).  Okay. (indiscernible) "The
15   prisoner poses an unreasonable risk of
16   dangerousness to society and would be a threat
17   to public safety if released.  The prisoner
18   should not be paroled (indiscernible) to deny
19   parole to this prisoner, signed Timothy Whalen,
20   Deputy District Attorney".
21       **INMATE DUMLAO:**  Excuse me Sir, I have no
22   violence on my - - I've never convicted of any
23   violence and I was offered a six-year plea
24   bargain on this because I'm not a violent
25   person, I have no violence.  I've never been
26   convicted - - I realize I have a history of
27   property theft, but I've never hurt nobody.

34

```
 1          PRESIDING COMMISSIONER INGLEE:  Well - -
 2          INMATE DUMLAO:  I've never taken nobody's
 3   life.
 4          PRESIDING COMMISSIONER INGLEE:  Well if
 5   you've ever had anything stolen from you, you
 6   know that hurts you.  It may not hurt you
 7   physically, you may not see any wounds on
 8   somebody, but you know, that's a - -
 9   particularly somebody who doesn't have many
10   assets, to lose, to lose their property can be
11   pretty traumatic.  Well you have, let me just
12   take you very quickly - - I'm not going to go
13   through all of them, Mr. Armenta will do this,
14   but I mean you, your participation in a  - - I
15   know your story, but participation in a race
16   riot, battery on an inmate, conspiracy to
17   assault the Aryan Brotherhood5 enembes I
18   mean, you got three in a row that indicates that
19   you don't mind mixing it up.
20          INMATE DUMLAO:  Sir, like the assault at
21   Calipat, that's the person I was talking about
22   who said that we have problems.  He was in the
23   hole also for he had assault on a staff and they
24   had him in the hole, well I don't know, I guess
25   they - - somehow got him, you know, didn't
26   realize that we weren't friends and they put us
27   in the same cell.  And - -
```

35

1       **PRESIDING COMMISSIONER INGLEE:**  Is this
2   the Aryan Brotherhood you talking about?

3       **INMATE DUMLAO:**  No, no I've been cleared
4   by Sacramento and all that.

5       **PRESIDING COMMISSIONER INGLEE:**  Because
6   sometimes these records are not as exact as they
7   should be.  Mr. Armenta has the records so I'm
8   going to go, rather than getting further into
9   this I'm going to turn it over to him and let
10  him handle that.

11      **INMATE DUMLAO:**  Okay.

12      **DEPUTY COMMISSIONER ARMENTA:**  Let's go
13  over what you've been doing.  In prison since
14  your last hearing, you had your last hearing in
15  the year 2000.  At that time you were denied for
16  two years and you came back for a hearing in
17  2003 and the hearing was held, but apparently
18  there was a problem with the tape, so they have
19  to redo the hearing.  And you came back on April
20  18th, 2004 and at that time you did sign a
21  (indiscernible) for a year.

22      **INMATE DUMLAO:**  Yes Sir.

23      **DEPUTY COMMISSIONER ARMENTA:**  So now your
24  back, okay.  What I've done, I've gone over your
25  C-Files, you have few.  And I've gone over the
26  files and read some of the reports prepared by
27  CC Juan Larios (phonetic), there was one report

36

1    prepared for this hearing entitle the Life
2    Prisoners Evaluation Report, also the Post-
3    Conviction Progress Report.  Also prepared by CC
4    Juan Larios (phonetic) also reviewed the
5    psychological report prepared by Dr. Maki dated
6    April 6th 2004.  At the present time, your
7    point, your scores are 59.

8         **INMATE DUMLAO:**  Yes Sir, they'll be 55 in
9    September, in two months.

10        **DEPUTY COMMISSIONER ARMENTA:**  Yeah, and
11   they were 49 a few years ago, they were lower.
12   And they went up, and they went up probably
13   because of your 115's you received in 2003.

14        **INMATE DUMLAO:**  Well after, before I - -

15        **DEPUTY COMMISSIONER ARMENTA:**  I'm just
16   telling you, okay, well get to that.  You'll get
17   a chance when I'm done you will be able to tell
18   us, okay?  But anyway you have a total of 21
19   115's and like I just stated you two most recent
20   ones were in the year 2003.  A total of seven
21   128's and the most recent on July 30th 2000.
22   You've been involved in some training, you've
23   been involved in quite a few training courses,
24   but I didn't see anything here Sir that you had
25   got completed at (indiscernible).

26        **INMATE DUMLAO:**  I have a completion in
27   silk-screening, I have 2200 hours of silk-

37

1  screening.

2  **DEPUTY COMMISSIONER ARMENTA:**  Silk-

3  screening, okay.  I'll look for it right now.

4  **INMATE DUMLAO:**  It was my, when I was on

5  the level one.

6  **DEPUTY COMMISSIONER ARMENTA:**  Okay you

7  got your, you've been trained and taken part in

8  training classes like, you know, computer

9  related technology, auto, auto mechanics.

10  **INMATE DUMLAO:**  Yes Sir.

11  **DEPUTY COMMISSIONER ARMENTA:**  Shoe repair

12  and vocational plumbing.

13  **INMATE DUMLAO:**  Yes Sir.

14  **DEPUTY COMMISSIONER ARMENTA:**  You've

15  learned from work while in prison, you've worked

16  as a porter, you worked on the yard crew and in

17  the boiler room.

18  **INMATE DUMLAO:**  Yes Sir.

19  **DEPUTY COMMISSIONER ARMENTA:**  As well as

20  clothing, the clothing exchange.  Have you had

21  any other jobs?

22  **INMATE DUMLAO:**  No Sir.

23  **DEPUTY COMMISSIONER ARMENTA:**  You've

24  taken classes in anger management and we do have

25  your certificate that you showed us.  And that

26  was by Creative Options, right?

27  **INMATE DUMLAO:**  Yes.

38

1       **DEPUTY COMMISSIONER ARMENTA:** Okay, on

2 March 12th, signed March 12th 2005. And then I

3 did mention your 115's, so you can tell me

4 whatever you wish now.

5       **INMATE DUMLAO:** It was in regards to my

6 points. Before I left Calipatria.

7       **DEPUTY COMMISSIONER ARMENTA:** Uh huh.

8       **INMATE DUMLAO:** Counselor Cryman

9 (phonetic) stated that he found eight points

10 that shouldn't be there. And he said there was

11 a 115 that I was given six points for twice in

12 1980-something in San Quentin. And then there

13 was another 115 that when they changed the

14 level, I mean when they changed the point system

15 from six to four I should have only been given

16 four, he said that's eight points and they

17 haven't corrected that.

18       **DEPUTY COMMISSIONER ARMENTA:** Oh, okay.

19       **INMATE DUMLAO:** And it can be verified by

20 Counselor Cryman (phonetic) at Calipat's and

21 they haven't done it yet. So actually I should

22 have been level three a while back.

23       **DEPUTY COMMISSIONER ARMENTA:** Oh, okay.

24 You mean you should be under 50?

25       **INMATE DUMLAO:** Yes Sir.

26       **DEPUTY COMMISSIONER ARMENTA:** Okay. Then

27 let's go over your psychological report.

39

1    There's two areas that I cover.  One is call the

2    diagnosis, under Axis I, heroin addiction in

3    remission due to incarceration.  And under Axis

4    II is social personality disorder, Axis III,

5    which is the medical, it says "history of

6    asthma, hepatitis-C and kidney gall stones".

7    Under Axis IV, which is the stressors, is due to

8    being incarcerated gives you a functional score

9    between 61 and 70.  In the area of whether they

10   consider you a danger or not, under that section

11   of assessment to dangerousness, "Within a

12   controlled setting Mr. Dumlao danger potential

13   is judged to be low to average.  When on drugs

14   and lacking structure it is much higher as

15   evidenced by his incident offense".  Okay, is

16   there anything else you wish to add?  Anything

17   you want to say about this, the report Sir?

18          **INMATE DUMLAO:**  No Sir.

19          **DEPUTY COMMISSIONER ARMENTA:**  And what

20   was stated?  Anything else you want to say about

21   your 115's?

22          **INMATE DUMLAO:**  No Sir.

23          **DEPUTY COMMISSIONER ARMENTA:**  What about

24   AA, NA, I didn't see too much in your files.

25          **INMATE DUMLAO:**  I have two certificates

26   18-months in AA and NA.

27          **DEPUTY COMMISSIONER ARMENTA:**  Uh huh.

40

1     **INMATE DUMLAO:** And they haven't had it
2  here. I was on the list. Counselor Lorios has
3  put me on the list last year.
4     **DEPUTY COMMISSIONER ARMENTA:** Okay.
5  You've been in prison how long?
6     **INMATE DUMLAO:** Twenty-five years, almost
7  25-years.
8     **DEPUTY COMMISSIONER ARMENTA:** Twenty-five
9  years and you've taken part in a year and a half
10 in AA, NA?
11    **INMATE DUMLAO:** Yes Sir.
12    **DEPUTY COMMISSIONER ARMENTA:** That's not
13 very much.
14    **INMATE DUMLAO:** No Sir, I went to it at
15 Tahatchapi, but I just didn't get a certificate.
16    **DEPUTY COMMISSIONER ARMENTA:** When was
17 the last time you used heroin?
18    **INMATE DUMLAO:** Nineteen, well, 1987.
19    **DEPUTY COMMISSIONER ARMENTA:** Ninety-
20 seven?
21    **INMATE DUMLAO:** No, I was at Folsom Sir.
22    **DEPUTY COMMISSIONER ARMENTA:** Folsom,
23 okay. Anything else?
24    **INMATE DUMLAO:** No Sir.
25    **DEPUTY COMMISSIONER ARMENTA:** That I
26 didn't cover? Okay, thank you that concludes
27 that portion.

41

1          **PRESIDING COMMISSIONER INGLEE:**  You've
2    been in prison a long time.

3          **INMATE DUMLAO:**  Yes Sir.

4          **PRESIDING COMMISSIONER INGLEE:**  The crime
5    was a bad crime, but that's a long time for
6    being for a non-capital crime.

7          **INMATE DUMLAO:**  Yes Sir.

8          **PRESIDING COMMISSIONER INGLEE:**  I think
9    it's quite obvious that your 115's are what has
10   kept you around.

11         **INMATE DUMLAO:**  Yes Sir.

12         **PRESIDING COMMISSIONER INGLEE:**  I
13   recognize that some of those 115's you have a
14   concern about that you might not have been
15   totally at fault, but that's a fairly impressive
16   list.  You have to start taking a look at
17   yourself in regard to, you know, some of these
18   thing.  You have to start understanding that to
19   be able to get parole.

20         **INMATE DUMLAO:**  Yes Sir.

21         **PRESIDING COMMISSIONER INGLEE:**  You're
22   going to have to prove to a Hearing, either
23   today or in the future that you're going to be a
24   trustworthy person to let outside.

25         **INMATE DUMLAO:**  If I'm given a date Sir,
26   I'll keep it clean.

27         **DEPUTY COMMISSIONER ARMENTA:**  Can I tell

42

1  him something?

2     **PRESIDING COMMISSIONER INGLEE:**  Sure, go
3  ahead.

4     **DEPUTY COMMISSIONER ARMENTA:**  You've got
5  the type of offense that I've seen many inmates
6  get dates for.  Like you said, you know, like
7  the Commissioner stated you're not in, you don't
8  have a you know capitol crime.  You do have the
9  time of offense where people have gotten dates.

10     **INMATE DUMLAO:**  If I'm given a date Sir,
11  I can make this parole and I'll keep it clean.
12  I won't get no 115's.

13     **DEPUTY COMMISSIONER ARMENTA:**  Yeah, but
14  your not going to be getting 115's out there.

15     **INMATE DUMLAO:**  No, I mean you can give
16  me any kind of date and I'll keep it clean.  I
17  can walk away from something, you know.  But
18  sometimes there's, like that riot, I just
19  couldn't walk away from.  And if I'd have ran I
20  wouldn't be here now, you know.

21     **DEPUTY COMMISSIONER ARMENTA:**  Okay.

22     **INMATE DUMLAO:**  I had to defend myself.

23     **DEPUTY COMMISSIONER ARMENTA:**  I have to
24  turn the tape over.

25            [Off the record]

26     **DEPUTY COMMISSIONER ARMENTA:**  Okay we are
27  on side two of the tape.  Go ahead.

43

1          **INMATE DUMLAO:** They told me if I
2   wouldn't have gotten in that race riot I'd have
3   got a date, but it was, I couldn't avoid it, it
4   was unavoidable.  I had to defend myself; it was
5   either defend myself or run.  I had nine years;
6   almost ten years clean at the time.

7          **DEPUTY COMMISSIONER ARMENTA:** Yeah, but
8   even after that one Sir, you got two, two more.

9          **INMATE DUMLAO:** One should have never
10  happened, they accidentally put me in with this
11  guy who said he had problems with me.

12         **DEPUTY COMMISSIONER ARMENTA:** Uh huh.

13         **PRESIDING COMMISSIONER INGLEE:** I think
14  what you've got to come to grips with is that I
15  see guys, just last week, same crime, exactly
16  the same crime, kidnap for robbery, and it was
17  even simpler than your crime.  And he got a
18  date.  The reason he got a date was he had gone
19  ten years without anything, not even a 128.  Now
20  I recognize that you're in prison and I'm not, I
21  understand that.  I realize life for you is far
22  more complicated and difficult than it is for
23  someone who is on the outside.  But there are
24  some men who stay away from these things.

25         **INMATE DUMLAO:** I stayed ten years clean.
26  I was ten years clean, I was doing good.

27         **PRESIDING COMMISSIONER INGLEE:** Clean,

44

1  ten or nine?

2       **INMATE DUMLAO:** Well nine actually.

3       **PRESIDING COMMISSIONER INGLEE:** Okay,

4  almost ten. Well, might as well

5  (indiscernible).

6       **INMATE DUMLAO:** I was clean for that

7  whole time and I had job offers and everything.

8       **PRESIDING COMMISSIONER INGLEE:** From

9  where?

10      **INMATE DUMLAO:** From, uh, it's in there,

11  from Gosni (phonetic) Construction and Back Hoe

12  Company in San Bernar - - in Wilmington, that's

13  my ex-wives ex-husband and he owns the company

14  and he wrote a letter, it's in there, stating

15  that he'd give me a job as soon as I was

16  released. And she wrote a letter in there to

17  that she owns five-bedroom home that's paid for

18  in Wilmington and that she can back me up on

19  anything I needed and help me make a parole.

20      **DEPUTY COMMISSIONER ARMENTA:** Yeah, he

21  didn't have a 115 from, actually from '92 to

22  2001.

23      **PRESIDING COMMISSIONER INGLEE:** How did

24  you accomplish that?

25      **INMATE DUMLAO:** I stayed clean. I just -

26      **PRESIDING COMMISSIONER INGLEE:** I mean

27  you're an older, you're a more mature man today.

45

1   If anything you should be going down on 115's,
2   not up on 115's as you get older.  I mean, I'm
3   not sitting here trying to make you feel bad.
4   I'm just being very franc with you about this.
5   I love to give guys dates, I really do.
6       **INMATE DUMLAO:**  I've got two years clean.
7   I realize that last fistfight, that should have
8   been a, that shouldn't have happened.  But I
9   just had to defend myself.
10      **DEPUTY COMMISSIONER ARMENTA:**  He's not
11  older, he's my age.
12      **PRESIDING COMMISSIONER INGLEE:**  I said
13  mature.
14      **DEPUTY COMMISSIONER ARMENTA:**  Oh, okay.
15  Yeah, I know what you said.
16      **PRESIDING COMMISSIONER INGLEE:**  Hey you
17  guys are all younger than I am.  We're not in
18  prison and you are unfortunately for you, but
19  no, I, you know so I have an appreciation for
20  what you're going through.  But it's hard to see
21  you go that long and then jump, get two or three
22  of these things in a row.
23      **INMATE DUMLAO:**  I can make a parole our
24  if Sir.  I have backing, I have everything.  I
25  just need a chance.
26      **PRESIDING COMMISSIONER INGLEE:**  Okay.
27  Counselor, do you have any questions?

46

1          **ATTORNEY LUDWIG:**  I have no questions.
2          **PRESIDING COMMISSIONER INGLEE:**  Do you
3   have a closing statement?

4          **ATTORNEY LUDWIG:**  Well I have a brief
5   closing statement.  Mr. Dumlao's Psych report
6   says, "if on drug and lacking structure, then he
7   perhaps may be an average to high risk to the
8   community".  He has stated that he has plans for
9   Delancey Street, and he also has a stable living
10  arrangement with his ex-wife and or daughter
11  when he gets out.  So he has plans to eliminate
12  both of those risk factors.  And since he has
13  that I think he's suitable for parole.

14         **PRESIDING COMMISSIONER INGLEE:**  Thank you
15  very much.  Mr. Dumlao you can go on what your
16  attorney said or you can make statement
17  regarding acceptability for parole.

18         **INMATE DUMLAO:**  I agree with her.  I can
19  make a parole Sir, if given the chance.  I can
20  make it now as I can another year from now, I
21  can make it right now Sir; all I need is a
22  chance.  I'm going to get into Delancey Street
23  if I can get to San Quentin or Vacaville;
24  they'll come interview me.  I know I'll get
25  accepted, I'll get accepted and I'll complete
26  that program.  All I want is a chance.  Well if
27  you don't get a date I'll put a notation on your

47

1   file that that's what you're looking for, but

2   that's something we'll discuss right now unless

3   you have something else to say?

4        **INMATE DUMLAO:**  No Sir.

5        **PRESIDING COMMISSIONER INGLEE:**  With that

6   in mind then, we're going to take a recess for

7   deliberations.

8                    **R E C E S S**

9                       --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

48

```
1        CALIFORNIA BOARD OF PAROLE HEARINGS
2                  D E C I S I O N
3        PRESIDING COMMISSIONER INGLEE: Okay, it
4    is 3:00 p.m., all of the people who were here
5    prior to our recess are back in place. In the
6    matter of John Dumlao, Dumlao. Will you
7    pronounce that again for me?
8        INMATE DUMLAO: D-U-M-L-A-Y-O (phonetic).
9        PRESIDING COMMISSIONER INGLEE: Dumlao,
10   Dumlao, I'm sorry. John Dumlao CDC number C-
11   16555. The Panel reviewed all information
12   received from the public and relied on the
13   following circumstances in concluding that the
14   prisoner is still not suitable for parole and
15   would pose unreasonable risk of danger to
16   society or a threat to public safety if released
17   from prison. In regard to the offense in
18   consideration was carried out in a
19   (indiscernible) manner. The motive of the crime
20   was trivial in relation to offense. These are
21   conclusions that were drawn from - - the inmate
22   committed offense involving the kidnap of a
23   (indiscernible) of a business. He was in an
24   antique sh - -, antique sh - - antique store at
25   the time that the inmate and his crime partner
26   entered in an attempted to rob it. They took
27   JOHN DUMLAO  C-16555  DECISION PAGE 1    7/06/05
```

1   him to his residence where he because he didn't
2   have sufficient money actually at the store, and
3   at the residence they did take cash
4   (indiscernible) articles, leaving him on the
5   floor tied up by a telephone cord.  In addition
6   the inmate was also convicted of a robbery of an
7   antique and coin collection exchange.  There
8   were five victims in that robbery
9   (indiscernible) the inmate and his crime
10  partners took $40,000 in gold jewelry, silver,
11  cash as well as wallets of the victims plus
12  multiple victims were attacked and involved in a
13  totally separate incident.  The prisoner has had
14  an escalating pattern of criminal conduct as
15  well as previous grants of probation and parole
16  and cannot be counted upon to avoid criminality
17  or to profit from society's previous attempts to
18  correct his criminality.  Such attempts included
19  juvenile probation, adult probation, parole,
20  county jail and prior prison term, one of being
21  a Federal Prison.  Unstable history of
22  criminality, juvenile record starting at the age
23  of 16 he was arrested for grand theft, at 17
24  convictions of arrests starting in 1964 through
25  1980 prior to the incident offense which caused
26  his current incarceration.  The prisoner has
27  **JOHN DUMLAO  C-16555  DECISION PAGE 2   7/06/05**

50

1   programmed in a limited manner while

2   incarceration.  Failed to develop true marketing

3   skills and (indiscernible) he could use upon

4   release.  Has failed to mature and upgrade

5   himself educationally and vocationally.  Has not

6   sufficiently participated in self-help program.

7   Has had seven 128 counseling chronos, the last

8   being 7/30 of 2000, obstructing a peace officer,

9   and had had 21 serious 115 disciplinary reports,

10  the last being 8/16 of '03 of mutual combat and

11  then in the same year, 3/21 of '03 battery on an

12  inmate.  The Psychological Report dated 4/6 of

13  '04 by R. Menke (phonetic), Doctor of Psychology

14  is unfavorable in that the doctor says, "Within

15  a controlled setting Mr. Dumlao's danger

16  potential is judged to be low to average.  When

17  on drugs of lacking structure it is much higher

18  as evidenced by his incident offense".  Mr.

19  Dumlao recognizes that the CCD 115's will not

20  help his chance for parole.  He continued to

21  minimize or rationalize his criminal conduct,

22  although it is probably less than this time than

23  earlier, he lacks empathy and remorse.  His

24  parole plans, he appears to have a residential

25  plan, however he does not have an acceptable

26  employment plan.  The Hearing Panel noted

27  **JOHN DUMLAO  C-16555  DECISION PAGE 3   7/06/05**

51

1   responses to PC 3042 Notices indicated
2   opposition to finding of parole suitability,
3   specifically from the District Attorney of
4   Alameda County.  The prisoner should be
5   commended for his high school graduation,
6   vocational silk-screening certificate, anger
7   management Creative Options, and participation
8   in AA and NA.  I must say though, since your
9   participation in Alcoholics Anonymous and
10  Narcotics Anonymous you've apparently had
11  problems getting into that program, but that's
12  something you should work on very hard
13  (indiscernible).  In a separate decision the
14  Hearing Panel finds that it is not reasonable to
15  expect that parole would be granted at a hearing
16  during the following two years.  The specific
17  reasons for this finding are as follows;
18  multiple victims were attacked in separate
19  incidences.  The offense was carried out in a
20  calculated manner.  The motive of the crime was
21  trivial in relation to the offense.  Prisoner
22  has extensive history of criminality and
23  (indiscernible) as noted before.  Arrests at the
24  age of 16 and then 17, additional arrests from
25  the years of 1964 through 1980.  The prisoner
26  recently committed serious disciplinary
27  **JOHN DUMLAO  C-16555  DECISION PAGE 4   7/06/05**

1   violations in 2003 getting two 115's.  The
2   Prisoner has not completed necessary
3   programming, which is essential to adjustment
4   and needs additional time to gain such
5   programming, particularly in the area of
6   Alcoholics Anonymous and Narcotics Anonymous.
7   And also the gaining of more of a stable
8   vocation to take once he receives parole.  The
9   Panel recommends if he can become and remains
10  disciplinary free, and if available upgrade
11  vocationally and educationally and if available
12  participate in self-help.  That is our Decision.
13  You need to get out of jail.
14        **INMATE DUMLAO:**  I need to what?
15        **PRESIDING COMMISSIONER INGLEE:**  You need
16  to get out of prison.  You've been in too long.
17  I'm not telling you anything new.  You really
18  need to work on this.  You have spent too many
19  years in for the crime that was committed.
20        **INMATE DUMLAO:**  I'm not a violent person,
21  I've never committed no violent crimes.  This is
22  the only one; there is not physical violence.
23        **PRESIDING COMMISSIONER INGLEE:**  Okay.
24        **DEPUTY COMMISSIONER ARMENTA:**  You are
25  very violent.  Your last 115 or second to the
26  last 115 were you got in a fight that inmate,
27  **JOHN DUMLAO  C-16555  DECISION PAGE 5   7/06/05**

53

1  they maced you, and they kept on macing you to

2  get you off him and you kept on hitting him.  To

3  me, that's pretty violent.

4       **INMATE DUMLAO:**  I was fighting with two

5  inmates.  I was fighting with two inmates at the

6  same time.

7       **DEPUTY COMMISSIONER ARMENTA:**  Well, I

8  didn't read that in the report.

9       **INMATE DUMLAO:**  It's in the video.

10  That's why they dropped it to mutual combat

11  because of that.

12       **DEPUTY COMMISSIONER ARMENTA:**  Well,

13  you're not very peaceful.  The thing is that

14  they told you to stop, the CO's said you

15  wouldn't stop, you kept on hitting him.

16       **INMATE DUMLAO:**  It's a riot, I'm fighting

17  for my life.

18       **PRESIDING COMMISSIONER INGLEE:**  This is

19  the completion of our Hearing, thank you very

20  much and good luck to you.

21                    --oOo--

22

23  **PAROLE DENIED TWO YEARS**

24  **THIS DECISION WILL BE FINAL ON:** NOV -3 2005

25  **YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT**

26  **DATE, THE DECISION IS MODIFIED.**

27  **JOHN DUMLAO  C-16555  DECISION PAGE 6   7/06/05**

54

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, JA WILLIS, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 53, and which recording was duly recorded at CENTINELA STATE PRISON, IMPERIAL, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING OF JOHN DUMLAO, CDC NO. C-16555, ON JULY 06, 2005, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated JULY 22, 2005, at Sacramento, California.


JA WILLIS
TRANSCRIBER
**PETERS SHORTHAND REPORTING**

John K. Dumlao 04655
P.O. Box 5101 A1-215
Kern Valley State Prison
Delano, Calif. 93216

Kern Valley State Prison
Facility A, Building 2

from

United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, Calif. 94102

RECEIVED
JUN - 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

KVSP LEGAL MAIL